UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD SIMEON PITTMAN, | 1:18-cv-01316-DAD-GSA-PC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED WITH PLAINTIFF'S MEDICAL CLAIM AGAINST DEFENDANT KAMEN, AND RETALIATION CLAIMS AGAINST DEFENDANTS KAMEN AND HICKMAN, THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED BASED ON PLAINTIFF'S FAILURE TO STATE A CLAIM** |
| v. | |
| DR. KAMEN, et al., | |
| Defendants. | |
| | **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

**I.  BACKGROUND**

Edward Simeon Pittman ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On September 25, 2018, Plaintiff filed the Complaint commencing this action.  28 U.S.C. § 1915A.  (ECF No. 1.)

On September 16, 2019, the court screened the Complaint and issued an order requiring Plaintiff to either (1) File a First Amended Complaint, or (2) Notify the court that he does not wish to file a First Amended Complaint and instead be willing to proceed only with the medical, ADA, RA, and retaliation claims against defendant Dr. Kamen found cognizable by the court, dismissing all other claims and defendants.  On November 8, 2019, Plaintiff filed the First Amended Complaint which is now before the court for screening.  28 U.S.C. § 1915A.

1

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF COMPLAINT

Plaintiff is presently incarcerated at Avenal State Prison in Avenal, California, where the events at issue in the Complaint allegedly occurred. Plaintiff names as defendants Dr. Geoffrey Kamen, Stephen Hickman (Physician's Assistant), S. Gates (Chief, Health Care Staff), and Donald B. McElroy (CEO, Healthcare Services) (collectively, "Defendants").

Plaintiff's allegations follow:

On or about March 24, 2018, Dr. Kamen declared Plaintiff healed of his disability and

removed all approved medical restrictions, i.e., lower bunk, restrictions on lifting and walking with use of a cane. When Plaintiff asked him why, Dr. Kamen attempted to intimidate him, asking Plaintiff if he was scared he was going to get beat up. Dr. Kamen also took Plaintiff's "mobility impaired" vest. Amended Compl. at 3. At no point were any x-rays ordered that would support Dr. Kamen's claim that Plaintiff does not need a cane or treatment. Plaintiff contends that simply talking to Plaintiff is not treatment unless Dr. Komen knows more than what the actual x-rays show. Plaintiff told Dr. Kamen that he intended to appeal the issue and Kamen told Plaintiff that he might lose his cane if he tried that.

On April 11, 2018, Plaintiff was called to Medical where defendant Hickman interviewed Plaintiff about the institutional level of his appeal. Hickman's supervisor is Dr. Kamen, so this presents a conflict in the 602 process. Physician's Assistant Hickman told Plaintiff to give up his cane (which Plaintiff had purchased because he has a permanent disability), because Plaintiff wanted to file a medical 602 prison appeal. Hickman was not trying to prevent significant illness or disability, or alleviate severe pain. Plaintiff's needs are supported by health care data Hickman had access to (x-rays and medical history), which would support effective medical care. Hickman could have remedied the situation by returning the mobility impaired vest and not taking Plaintiff's cane. Hickman's involvement shows that Hickman had no concern for Plaintiff's medical rights. Plaintiff has requested a lie detector test to be administered to whoever, on April 12, 2018, whom claimed that Plaintiff was able to walk normally, had the ability to ambulate, and his activities of daily living were not affected. Plaintiff had just fallen because his cane was taken the day before. Plaintiff is not an invalid, but he cannot walk more than 100 yards without assistance. On April 12, 2018, Plaintiff was threatened with disciplinary action if he fell again, and told that medical staff would direct correctional officers not to respond.

Plaintiff submitted a medical appeal. Defendant McElroy stated that he reviewed records and found that Plaintiff could walk fine and that his daily activities were not affected but never did talk to or see Plaintiff. McElroy is not medically qualified to respond to medical appeals because he does not have a medical background. The facts are that beginning on April 12, 2018, Plaintiff had to hold on to another man's arm in order to get to the chow hall and religious

services. Plaintiff's friend, inmate Aaron Apodaco, found Plaintiff a cane when he moved to another building. If not for that Plaintiff would miss a lot of meals and religious services. McElroy's opinion was biased and did not allow for due process.

Plaintiff claims that reprisals and deliberate indifference are the reasons Plaintiff is not receiving care. Defendant Gates of CCHCS responded to Plaintiff's appeal with a headquarters-level response, which makes him a participant in the acts committed against Plaintiff. On August 9, 2018, Gates responded with verbiage almost identical to defendant McElroy's. The response states that grievants cannot dictate administrative actions to be taken in regard to the conduct of the health care grievance review, or adverse action against staff. Plaintiff had asked for an investigation into how the nearly one billion dollars CDCR receives for medical care was being spent.

Defendant Gates claims that California Healthcare Services (a business) providers are trained and capable of providing care for patients with pain. Defendant Gates denied Plaintiff relief when all evidence was before him, placing him in an active role in disregarding an excessive risk to inmate health or safety. The staff denies treatment and then claims that Plaintiff is receiving treatment.

Plaintiff seeks declaratory relief, adequate medical care or transfer to a medical facility, and $5,000.00 in punitive damages.

### IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. <u>Nurre v. Whitehead</u>, 580 F.3d 1087, 1092 (9th Cir 2009); <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006);

Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Crowley v. Nevada ex rel. Nevada Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012) (citing Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865 (1989)) (internal quotation marks omitted). To state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights. Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

### A. Eighth Amendment Medical Claim

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the

facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Benge v. Ryan, 154 F. Supp. 3d 857, 865 (D. Ariz. 2016) (quoting McGuckin, 974 F.2d at 1059, overruled on other grounds, WMX Techs., Inc., 104 F.3d at 1136). Examples of indications that a prisoner has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Id. (quoting McGuckin, 974 F.2d at 1059–60).

Here, Plaintiff alleges that he has a permanent disability, cannot walk more than 100 yards without the assistance of a cane or help from another person, and is subject to falling down when walking without assistance. These allegations are sufficient for the court to find that Plaintiff has a serious medical need.

Plaintiff has also shown that defendant Dr. Kamen treated him with deliberate indifference. Plaintiff makes allegations from which to infer that Dr. Kamen knew that Plaintiff had a permanent disability and was at substantial risk of serious injury or other serious damage to his health without medical accommodations, yet cancelled all of the accommodations without explaining to Plaintiff why they were being cancelled. These allegations are sufficient to state a

medical claim against Dr. Kamen.

### B. Due Process Claim -- Appeals Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing a prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005) accord George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance

v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996).; Haney v. Htay, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. Feb. 21, 2017).

The majority of Plaintiff's allegations against defendants Hickman, Gates, and McElroy pertain to their review and handling of Plaintiff's inmate appeals. Plaintiff contends that their participation in responding to Plaintiff's appeals causes them to be liable for acting with deliberate indifference to Plaintiff's serious medical needs. However, as discussed here, their participation in review and handling of inmate appeals does not serve as a basis for liability in this § 1983 action.

Thus, Plaintiff's allegations that defendants Hickman, Gates, and McElroy did not properly process his appeals fail to state a claim.

### C. **ADA and RA Claims**

Title II of the ADA, 42 U.S.C. § 12131 et seq., and § 504 of the Rehabilitation Act, as amended and codified in 29 U.S.C. § 701 et seq. ("RA"), prohibit discrimination on the basis of a disability in the programs, services or activities of a public entity. Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

The elements of a cause of action under Title II of the ADA are: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). A cause of action under § 504 of the RA essentially parallels an ADA cause of action. See Olmstead v. Zimring, 527 U.S. 581, 590 (1999); Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001).

Monetary damages are not available under Title II of the ADA absent a showing of discriminatory intent. See Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998). To show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity. Duvall, 260 F.3d at 1138. Deliberate indifference requires: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. Id. at 1139. The first prong is satisfied when the plaintiff identifies a specific, reasonable and necessary accommodation that the entity has failed to provide, and the plaintiff notifies the public entity of the need for accommodation or the need is obvious or required by statute or regulation. Id. The second prong is satisfied by showing that the entity deliberately failed to fulfill its duty to act in response to a request for accommodation. Id. at 1139-40. Punitive damages may not be awarded in suits brought under Title II of the ADA. Barnes v. Gorman, 536 U.S.181, 189 (2002).

**Discussion**

The ADA defines a disability, with respect to an individual as "a physical or mental impairment that substantially limits one or more major life activities of such an individual." 42 U.S.C. § 12102(1)(A). The court finds that Plaintiff has adequately alleged that he is disabled under the ADA.

However, Plaintiff's ADA claim is defective. Although "[t]he ADA prohibits discrimination because of disability," it does not provide a remedy for "inadequate treatment for disability." Simmons v. Navajo County, Ariz, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir.1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . . The ADA does not create a remedy for medical malpractice.")). Here, the First Amended Complaint alleges no more than a failure to attend to Plaintiff's medical needs. Defendants' acts in revoking Plaintiff's medical accommodations involve their response to Plaintiff's medical needs. There are no allegations that Plaintiff was excluded from any program or service, or that the institution had a policy to deny accommodation or otherwise discriminate against disabled prisoners.

The court's previous screening order found that Plaintiff stated ADA and RA claims against defendant Dr. Kamen. However, the court now finds that Plaintiff's claim is insufficient

to entitle him to relief under the ADA or RA, because inadequate medical treatment for a disability is insufficient to sustain a claim under the RA or Title II of the ADA.

///

Although leave to amend should be liberally granted, Doe v. United States, 58 F.3d 494, 497 (9th Cir.1995), this rule applies only where a complaint can possibly be saved. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir.2000). Plaintiff's ADA claim against Defendants in their individual capacity is foreclosed as a matter of law. Thomas v. Nakatani, 128 F.Supp.2d 984, 691–93 (D. Hawai'i 2000). Even if Plaintiff could add facts by amendment that would support the element of intentional discrimination, such amendment would be futile because Defendants still could not be individually liable under the ADA, and amendment to clarify that suit is brought against Defendants only in their official capacity would also be futile. Because leave to amend need not be granted where the futility of amendment is apparent, it will not be recommended here.

The court finds that Plaintiff fails to state a cognizable claim under the ADA or RA against any of the named Defendants.

### D. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288

(9th Cir. 2003). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin, 515 U.S. at 482). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Here, Plaintiff alleges that when he told Dr. Kamen he intended to file a medical appeal because Dr. Kamen had declared Plaintiff healed of his disability and removed all of his medical accommodations, Dr. Kamen told Plaintiff that he might lose his cane if he tried that. Liberally construed, these allegations are sufficient to state a claim for retaliation against Dr. Kamen.

Plaintiff also alleges that defendant Physician's Assistant Hickman, whose supervisor was Dr. Kamen, forced Plaintiff to give up his cane, which Plaintiff had purchased himself, when Hickman was interviewing Plaintiff for his 602 medical appeal. These allegations are sufficient to state a claim for retaliation against defendant Hickman.

## V.  CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the court finds that Plaintiff states cognizable claims in the First Amended Complaint against defendant Dr. Kamen for failure to provide adequate medical care under the Eighth Amendment, and retaliation under the First Amendment; and against defendant Hickman for retaliation under the First Amendment. However, Plaintiff fails to state any other cognizable § 1983 claims against any of the named Defendants.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Here, the court previously granted Plaintiff leave to amend the complaint, with ample guidance by the court. The court is persuaded that Plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state additional cognizable claims. "A district court may deny leave to amend when amendment would be futile." Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013). The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

///

///

///

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. This case proceed only with Plaintiff's medical claim against defendant Kamen and retaliation claims against defendants Kamen and Hickman; but no other claims;
2. All remaining claims and defendants be DISMISSED, with prejudice, for Plaintiff's failure to state a claim upon which relief may be granted; and
3. This case be referred back to the Magistrate Judge for further proceedings, including service of process.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after the date of service of these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 8, 2020**  **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE